IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

G.T., *by his parents Michelle and Jamie T. on behalf of himself and all similarly situated individuals*,
and THE ARC OF WEST VIRGINIA,

                        Plaintiffs,

v.                                             CIVIL ACTION NO.  2:20-cv-00057

KANAWHA COUNTY SCHOOLS and
RON DUERRING, *Superintendent,*
*Kanawha County Schools, in his official capacity*,

                        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Partial Motion to Dismiss Amended Complaint* (Document 26), the *Memorandum of Law in Support of Defendants' Partial Motion to Dismiss the First Amended Class Action Complaint* (Document 27), the *Plaintiffs' Memorandum in Opposition to Defendants' Partial Motion to Dismiss* (Document 30), and the *Defendants' Reply to Plaintiffs' Opposition to Defendants' Partial Motion to Dismiss* (Document 34), as well as the Plaintiffs' *First Amended Class Action Complaint* (Document 22) and all attached exhibits.[1] For the reasons stated herein, the Court finds that the motion to dismiss must be granted in part and denied in part.

**FACTUAL ALLEGATIONS**

The Plaintiffs, G.T., K.M., and The Arc of West Virginia, bring this action on behalf of themselves and a class of similarly situated students. They named the Board of Education of

---

[1] Counsel for both parties submitted thorough, well-researched, and well-reasoned briefing in this matter.  In addition to benefiting their clients, that effort permits the Court to more efficiently resolve the motion.

Kanawha County (BOE) and Ron Duerring, Superintendent, as Defendants. G.T. and K.M. are elementary school students attending Kanawha County Schools. G.T. has autism and attention deficit hyperactivity disorder (ADHD). K.M. has Down syndrome and ADHD. They are both students with disabilities who are eligible for special education. The Arc of West Virginia is a not-for-profit membership organization focused on disability rights, particularly for those with intellectual and developmental disabilities. Among other services, it provides support for families of children receiving special education services at public schools in West Virginia. G.T and K.M. are each constituents of the Arc, and their parents are members. More than twenty students eligible to attend Kanawha Schools are served by the Arc, including seventeen students at Kanawha Schools.

The purported class consists of: "All Kanawha County Schools students with disabilities who need behavior supports and have experienced disciplinary removals from any classroom." (Am. Compl. at ¶ 39.) More than 5,500 Kanawha Schools students have disabilities and receive special education or other services pursuant to the IDEA (Individuals with Disabilities Education Act) or Section 504 of the Rehabilitation Act. More than 2,000 of those students "have disabilities such as emotional disturbance, autism, other forms of [intellectual or developmental disabilities], or other health impairments, including ADHD" that may require behavioral supports. (*Id.* at ¶ 40.) Students with disabilities in Kanawha Schools are subject to frequent suspensions, with at least 1,486 in the 2015-2016 school year and 1,611 in the 2018-2019 school year. The Plaintiffs allege that these frequent disciplinary measures, as well as overuse of segregated classrooms, result from the BOE's systematic failure to provide behavioral supports to students with disabilities.

G.T. and K.M. contend that the BOE has failed to provide them with a Free Appropriate Public Education (FAPE) as legally required. They each have disabilities with a behavioral component. Rather than providing adequate behavioral supports, the BOE utilized disciplinary measures, including suspension and expulsion, to remove them and similarly situated students from classrooms. In addition, the BOE often places children in segregated classrooms with little educational value based on their behavioral disabilities, depriving them of the educational opportunities available only in general education classrooms.

G.T. filed a complaint with the West Virginia Department of Education's Office of Federal Programs (WV OFP) on behalf of himself and a class of similarly situated students on June 5, 2019. He alleged that Kanawha Schools failed to provide him and similarly situated students with a FAPE. Following a due process hearing, the hearing officer dismissed the class allegations and allegations of violations of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act for lack of jurisdiction and denied all individual relief. K.M. filed a complaint with the WV OFP on behalf of himself and a class of similarly situated students on June 27, 2019. The hearing officer again dismissed class allegations and allegations of ADA and Section 504 violations for lack of jurisdiction. The hearing officer granted limited individual relief to K.M. and denied additional requested relief.

G.T. has a vocabulary that is advanced for his age and has an aptitude for math, making him academically capable of participating in general education classes for much of his school day. His disabilities cause him to have meltdowns or physical outbursts in response to certain triggers, including unfamiliar situations and becoming overwhelmed. Instead of providing behavioral and academic supports, the BOE placed G.T. in a self-contained segregated special education

3

classroom for 90% of the school day for first grade and the start of second grade. In the fall of 2018, he was moved into a general education classroom for the majority of the school day, but was not provided with behavioral or academic supports. He experienced frequent meltdowns, resulting in being sent to the principal's office, and he was suspended from school several times. The BOE eventually provided 30 minutes of autism services per month. Despite concern from his parents, the school did not provide further behavioral supports for G.T. or training for his teacher. Eventually, G.T. was suspended for ten days, and, over the objections of his parents and without completing a functional behavior assessment (FBA), placed in a self-contained behavior disorder room rather than general education. He remained in that classroom during 2019-2020 for his third-grade school year. When the FBA was conducted in January 2019, it was inadequate and has not been followed.

Despite an opinion from the Kanawha County Board of Education's autism consultant suggesting that G.T. could be reintegrated if the school identified and accommodated his triggers, the BOE has not attempted to do so. He does not receive effective behavior supports in the self-contained classroom. His Individualized Education Program (IEP) copies goals from previous years, rather than encouraging academic progress, and he spends much of his school day on an iPad without active instruction.

K.M. is a nine-year old fourth-grade student attending Kanawha County Schools. He has Down syndrome, ADHD, and oppositional defiant disorder (ODD), but has not been provided with needed behavioral support, resulting in several suspensions and disciplinary measures. K.M. is able to focus when interested in a topic, take in information, and engage with others. He has difficulty with fine motor skills and can struggle to maintain focus. His IEP includes behavior

goals, but not behavior support or instructional time devoted to social skills or behavioral curriculum. After his first-grade year, his home elementary school sought to move K.M. to a different school more than thirty minutes away to be placed in a self-contained classroom. His parents objected, and he missed school time during the dispute. When he eventually returned to his original elementary school, he was not provided a behavior intervention plan (BIP), and his teachers were not trained in addressing his challenging behavior. Instead, he was sent home early on more than twenty occasions during his second-grade year. The school developed a BIP in April 2018, without updating the FBA it had generated more than a year and a half earlier, but the BIP was inadequate to address K.M.'s needs. He received multiple out of school suspensions during his third-grade year, resulting in a revised BIP that again failed to address appropriate responses to his challenging behaviors and continued disciplinary suspensions.

Following a lengthy suspension in the second semester of his third-grade year, K.M.'s parents filed a complaint related to a determination that his behavior was not a manifestation of his disability. The school agreed to have a different behavioral analyst create a new FBA. Although this process identified ways in which school staff inadvertently contributed to K.M.'s behavior problems, the BOE did not provide appropriate staff training. He does not receive an engaging academic curriculum, and many of the services and supports outlined in his IEP have not been implemented consistently. During the time he spends in the general education classroom, he is physically separated from other students and unable to meaningfully interact with the class.

At the end of his third-grade year, three weeks after development of the new BIP in response to the new FBA, his local school again sought to move him to a different elementary school for placement in a segregated classroom for students with behavior disorders. K.M.'s

parents filed another due process complaint in response to the proposed school change, and he has remained in his home school. "Despite finding that the BOE failed to provide K.M. a FAPE by (i) failing to provide effective behavior supports for two years, (ii) failing to ensure K.M.'s behavior plans were being followed with consistency, (iii) failing to provide a social skills curriculum to ensure K.M. could be included in general education, and (iv) failing to make appropriate curriculum modifications, the Hearing Officer granted only limited relief, and did not order most of the remedies requested by K.M." (*Id*. at ¶137.) The Hearing Officer permitted the Kanawha County Board of Education to unilaterally determine whether K.M. could remain in his neighborhood school or assign him another school and denied K.M.'s request for independent specialists to assist with developing a more comprehensive FBA and BIP, an appropriate curriculum, and staff training. The Hearing Officer directed the BOE to consult its experts to determine whether the 2019 BIP was adequate, complete a new FBA and BIP if not, and review and modify K.M.'s academic curriculum. The BOE then determined that K.M. should be moved to another school and placed in a segregated classroom, and receive the curriculum taught in that classroom.

The Plaintiffs contend that K.M. and G.T.'s experiences are representative of the putative class members. The BOE consistently fails to provide behavior supports and staff training to support students with disabilities, relying instead on disciplinary measures and segregated classrooms without adequate academic challenges. "[T]he BOE fails to adequately analyze the root causes of students' concerning behaviors, and therefore fails to create effective IEPs or BIPs for them." (*Id.* at ¶ 150.) It does not consistently implement behavior interventions that are included in BIPs and does not train or support the staff who interact with the students to facilitate

adherence to the BIPs.  The BOE's required records document the frequent suspensions of students with disabilities, and advocates, including the Plaintiffs' counsel, have raised concerns with the BOE with no impact on the policies, practices, and procedures at issue.

The Plaintiffs allege violations of the Individuals with Disabilities Act, 20 U.S.C. § 1400 *et seq.*, of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and of the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.*  They seek certification of a class consisting of "All Kanawha County Schools students with disabilities who (1) need but are not receiving behavior supports from the BOE, and (2) have experienced disciplinary removals from any classroom."  They also seek declaratory judgment, preliminary and permanent injunctive relief, appointment of an independent monitor or ombudsman, and attorneys' fees and costs.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it.  "In contrast to its treatment of disputed issues of fact when considering a Rule 12(b)(6) motion, a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion."  *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986) *rejected on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988) (but explaining that a court should accept the allegations in the complaint as true when presented with a facial attack that argues insufficiency of the allegations in the complaint).  Reasonable discovery may be necessary to permit the plaintiff to produce the facts and evidence necessary to support their jurisdictional allegations.  *Id.*  The plaintiff has the burden of proving that subject matter jurisdiction exists.  *See Richmond,*

7

*Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). Dismissal for lack of subject matter jurisdiction is proper only if there is no dispute regarding the material jurisdictional facts and the moving party is entitled to prevail as a matter of law. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

## DISCUSSION

### A. Class Exhaustion

The Defendants argue that the class claims must be dismissed for failure to exhaust administrative remedies, as required by the IDEA. They contend that each class member must individually exhaust remedies because, in their view, any remedies would be individualized to each student.

The Plaintiffs argue that individual exhaustion by class members is not required because they allege systemic violations and seek systemic, rather than individualized, relief, rendering exhaustion futile. In the alternative, they contend that class representatives vicariously exhausted claims for the class as a whole. The Plaintiffs further note that it would take years for West Virginia's two due process hearing officers to individually adjudicate claims for each putative class member. In addition, the Plaintiffs assert that exhaustion is not required for their ADA and Section 504 claims, which focus on stigmatization and isolation rather than rights and remedies addressed under IDEA.

In reply, the Defendants argue that vicarious exhaustion has not been recognized for IDEA claims in the Fourth Circuit. They reiterate that the Plaintiffs' claims require individualized relief, and therefore individualized exhaustion, because behavioral supports are an aspect of each student's IEP. The Defendants contend that "the gravamen of Plaintiffs' [ADA and Section 504]

claims is the lack of behavior supports to assist a child in his or her classroom" which "goes to the heart of a school's responsibility to provide a FAPE," requiring exhaustion for the ADA and Section 504 claims as well as the IDEA claims. (Def. Reply at 8-9.)

The IDEA requires states to provide disabled children with a FAPE (free appropriate public education) in the "least restrictive and appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children." *MM ex rel. DM v. Sch. Dist. of Greenville Cty.*, 303 F.3d 523, 526 (4th Cir. 2002) (citing 20 U.S.C. § 1412(a)(5)(A)). Schools are not required to provide the best possible education or all services that might prove helpful for a child but must meet the minimum standard of providing a FAPE. *Id.* at 526-27.

Parents asserting violations of the IDEA are required to exhaust administrative remedies by requesting a due process hearing before bringing suit in federal court. *Id.* at 535; 20 U.S.C. § 1415(f). "The courts have recognized only three narrow exceptions to this exhaustion requirement, each arising largely out of the legislative history of the IDEA: (1) when the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child." *Id.* at 536. When a complaint does not expressly rely on the IDEA, exhaustion may still be necessary if "the gravamen of the plaintiff's suit is…the denial of IDEA's core guarantee—what the Act calls a 'free appropriate public education.'" *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017).

Neither party identified binding precedent with respect to whether individual exhaustion is futile and therefore not required for class claims of systemic practices that impede students' ability to receive a FAPE. The weight of the authority suggests that, under some circumstances,

individual exhaustion is not required for such claims. The First Circuit, considering both exhaustion and class certification, found that allegations that students with mental health disabilities were improperly and unnecessarily segregated out of neighborhood schools depended on individualized analysis of each student, rather than systematic policies or practices. *Parent/Prof'l Advocacy League v. City of Springfield, Massachusetts*, 934 F.3d 13, 27–28 (1st Cir. 2019). Therefore, the court held that individual exhaustion was required, and the claims lacked commonality as required for class certification. *Id.* The Ninth Circuit found that exhaustion was required for a challenge to a school district's provision of extended year services, likewise reasoning that the claims required individualized analysis. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992). The court explained: "Structuring a complaint as a challenge to policies, rather than as a challenge to an individualized education program formulated pursuant to these policies, however, does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement. Plaintiffs must demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement." *Id.* at 1304.

The Second Circuit summarized the required analysis as follows: "we are to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 113 (2d Cir. 2004). In that case, six named plaintiffs brought class claims[2] alleging a variety of IDEA and other disability rights violations, including inadequate physical accommodations, failure to notify parents of pertinent information, failure to develop and/or implement adequate IEPs, and

---

2 The class had not been certified at the time the court considered the motion to dismiss.

lack of teacher and staff training. *Id*. at 111. The Second Circuit summarized prior cases excusing exhaustion, and explained:

> The common element among these four cases is that the plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process. If each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results. Moreover, the plaintiffs' claims were such that an administrative record would not have been of substantial benefit to the district court.

*Id.* at 114.

Although the Fourth Circuit has not addressed class exhaustion under IDEA, it has recognized vicarious exhaustion in other contexts. *See, e.g.*, *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 490 (4th Cir. 1981) (finding exhaustion by class representative sufficient for a class Title VII claim); *King v. McMillan*, 233 F. App'x 242, 244–45 (4th Cir. 2007) (recognizing availability of single-filer rule or vicarious exhaustion). In *Hoeft*, the Ninth Circuit noted that exhaustion by the class representatives, which did not take place in that case, could be sufficient to satisfy the exhaustion requirement in the IDEA. *Hoeft*, 967 F.2d at 1310. District courts have also recognized vicarious exhaustion for class claims under IDEA. *H.P. v. Bd. of Educ. of City of Chicago*, 385 F. Supp. 3d 623, 636 (N.D. Ill. 2019) (finding one named plaintiff's exhaustion of claim related to the lack of translation services for parents with limited English proficiency sufficient to permit class claims)³; *DL v. D.C.*, 450 F. Supp. 2d 11, at fn. 2 (D.D.C. 2006) (finding

---

3 As in this case, allegations of systemic problems and collective claims were presented administratively, and the due process hearing officer found no jurisdiction to consider non-individual claims. Here, the Defendants contend that the Plaintiffs chose not to pursue the class allegations during the due process complaint process but argued at the administrative level that collective claims could be brought only in court.

11

that exhaustion would be futile because claims were systemic and policy-based such that agency expertise would not assist the court and school system had notice of the issue and failed to correct it, and in the alternative, concluding that representative plaintiffs had satisfied any exhaustion requirement on behalf of the class).

Whether the Court adopts the vicarious adoption rule for class complaints or relies on the factors relevant to futility, no further exhaustion is required in this case. G.T. and K.M. each exhausted administrative remedies on their similar complaints, and each provided notice during that process that they viewed the claims as systemic problems impacting a class of similarly-situated students.[4] The hearing officer found some violations as to K.M., but did not direct specific or effective relief, and denied relief as to G.T. The BOE continued to deny both students effective behavioral support, and both students continued to experience excessive segregation as well as discipline for disability-related behavioral problems. Even where the BOE recognized disability-related behavior issues and an IEP contained behavioral goals, it failed to provide behavioral supports. The complaint also alleges that students with disabilities were suspended at least 1,486 times in 2015-2016 and at least 1,611 times in the 2018-2019 school year. The BOE made no structural changes to address disabilities with a behavioral component. Students with disability-related behavioral issues are regularly placed in segregated classrooms that provide little educational benefit, regardless of their academic strengths.

As alleged by the Plaintiffs, these problems are not isolated incidences that could be corrected through the administrative process. "The BOE has no functioning system for

---

4 Although there is a lack of clarity as to whether the class claims were dismissed or the Plaintiffs chose not to pursue them, it is undisputed that the Defendants were well aware that the Plaintiffs sought collective relief on behalf of themselves and all similarly situated students in Kanawha County Schools.

identifying children with disabilities who need behavior supports and providing effective supports to them." (Am. Compl. at ¶ 11.) Instead, students are subject to frequent disciplinary removals, including suspensions, expulsions, and informal requests for parents to pick them up for the day. The BOE does not follow appropriate procedures to gain parental input and identify the causes of problematic behaviors when conducting FBAs or developing IEPs or BIPs. Teachers, staff, and parents do not receive adequate training to implement BIPs when they are developed. Whether students are in general education classrooms or in segregated classrooms for students with behavioral disabilities, they receive no meaningful behavioral supports. The discipline and segregation in turn result in stigmatization and isolation from peers, making integration into general education classrooms more challenging.

These allegations are structural in nature, and the experiences of K.M. and G.T. demonstrate the inadequacy of the relief available through due process complaints. Absent procedures to appropriately address disability-related behavioral problems at every stage—from identifying students who require behavioral support, to analyzing the behavioral triggers and crafting a BIP, to implementing the BIP—tinkering with individual students' IEPs or BIPs will not provide effective relief.[5] The Plaintiffs seek structural relief in the form of declaratory judgment, injunctive relief, and appointment of an independent monitor.

Requiring hundreds or thousands of impacted putative class members to individually exhaust remedies would serve no purpose. The remedies available would not adequately address

---

5 The Defendants contend that the case will require evaluation of and changes to individual student's IEPs. While the BOE might ultimately need to make such changes as a result of this litigation, should the Plaintiffs prevail, that is not the relief sought as part of this Court proceeding. The Plaintiffs will, of course, have to produce evidence in support of the allegations of systemic problems, as well as evidence in support of the factors for class certification, including commonality.

13

the alleged issues, and results would likely be piecemeal and inconsistent. West Virginia has two hearing officers, and the delay inherent in individual exhaustion would render any relief futile for many students. Administrative records will be of limited use, given the allegations related to policies and procedures. To the extent administrative records will assist the Court, those from G.T. and K.M. will be sufficient, and hundreds or thousands more would not be helpful. Likewise, the state and local authorities had the opportunity to apply their expertise and discretion as a result of G.T. and K.M.'s hearings. They were also placed on notice of the collective nature of the allegations, giving the BOE the opportunity to correct any shortcomings prior to this suit. Therefore, the Court finds that individual exhaustion by class members is not required under the facts alleged.

Having found that individual exhaustion of the IDEA claims is not required, the Court finds that it is unnecessary to determine whether the Section 504 and ADA claims relate to denial of a FAPE and are subject to the IDEA exhaustion requirement. The motion to dismiss the class allegations should be denied.

### B. Standing

The Defendants contend that The Arc of West Virginia lacks standing. They assert that representational standing in unavailable to the Arc WV as a membership organization because the claims "require individualized proof and the relief requested would necessarily require the participation of individual members of the organization." (Def. Mem. in Supp. of Mot. at 17.) The Arc of WV argues that precedent supports its claim of associational standing, given the request for declaratory and injunctive relief for alleged systemic failures that will not require individual participation by class members.

"An organization…can assert standing either in its own right or as a representative of its members. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). The Supreme Court has long established that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Organizations asserting associational standing must also identify at least one member who has or would suffer harm, and therefore would have standing. *S. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 184.

The Arc of West Virginia is a membership organization focused on disability rights, and it serves families with children receiving special education services at public schools in West Virginia. G.T. and K.M. are constituents, and their parents are members. There is no dispute that students and their families, including G.T. and K.M., have standing to sue for IDEA and other violations. Likewise, there is no dispute that the issues involved in this suit are germane to The Arc of West Virginia's purpose.

The Court finds that individual participation of members is not necessary to either assert the claims or obtain relief. As discussed in more detail above, the Plaintiffs seek systemic, structural changes in the way Kanawha Public Schools address disabilities with a behavioral component and the resulting challenging behavior and disciplinary responses. They do not ask the Court to become involved in individual students' IEPs. Instead, they seek injunctive relief

designed to more broadly reform policies and procedures. Thus, the Court finds that The Arc of West Virginia has associational standing, and the motion to dismiss it should be denied.

### C. Official Capacity Claims as to Superintendent Ron Duerring

Finally, the Defendants argue that the claims against Ron Duerring, brought in his official capacity as superintendent of schools for Kanawha County, should be dismissed as duplicative because an official capacity suit is treated as a suit against the entity. The Plaintiffs argue that Superintendent Duerring is a proper party because he would "be responsible for remedying violations and implementing Court-ordered relief." (Pl. Resp. at 21.) In reply, the Defendants argue that the BOE would effectuate any relief.

The Fourth Circuit has found it proper to dismiss a § 1983 claim against a superintendent in his official capacity as duplicative where the board of education was also named. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). In an unpublished decision, the Fourth Circuit applied the same reasoning to official-capacity defendants in an IDEA case, explaining that "[b]ecause a claim against a public official in his official capacity is 'essentially a claim against' the governmental entity that the official represents, the district court correctly dismissed as duplicative the claims against the individual defendants in their official capacities." *Z.G. by & through C.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 780 (4th Cir. 2018) (citing and quoting from *Love-Lane*, 355 F.3d at 783). Where the offices are distinct, however, a suit may be maintained against both an official capacity defendant and another governmental body. *Davison v. Loudoun Cty. Bd. of Supervisors*, 227 F. Supp. 3d 605, 613 (E.D. Va. 2017).

Neither party detailed the structure and duties of the BOE and the Superintendent to clarify whether the offices are distinct. Pursuant to West Virginia law, a superintendent is appointed by


a majority of the county board of education and may be removed for cause. W.Va. Code § 18-4-1–3. "The county superintendent shall…Act as the chief executive officer of the county board as may be delineated in his or her contract or other written agreement with the county board, and, under the direction of the state board, execute all its education policies." § 18-4-10. Given those provisions, the Court finds that the office of the Superintendent is not separate from the BOE, any relief as to the BOE would be implemented fully without the participation in this suit of Superintendent Duerring, and the claim against Mr. Duerring is duplicative. Accordingly, the motion to dismiss as to Superintendent Ron Duerring should be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Partial Motion to Dismiss Amended Complaint* (Document 26) be **DENIED** as to the class claims and The Arc of West Virginia and **GRANTED** as to Superintendent Ron Duerring. The Court further **ORDERS** that Ron Duerring, Superintendent, Kanawha County Schools, sued in his official capacity, be **DISMISSED** from this suit.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     July 16, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA