# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### Charleston Division

G.T., *by his parents* MICHELLE *and* JAMIE T.,
*on behalf of themselves and all similarly situated*
*individuals*, *and* THE ARC OF WEST VIRGINIA,

      Plaintiffs,

v.

                                       CIV. ACT. NO. 2:20-CV-00057
                                       JUDGE BERGER

THE BOARD OF EDUCATION OF
THE COUNTY OF KANAWHA,

      Defendant.

## MEMORANDUM IN SUPPORT

## OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND FACTS .........................................................................................2

    A.    KCS Does Not Provide Students with Disabilities Necessary Behavioral
         Supports to Build Social Skills and Self-Regulation. ...............................2

    B.    KCS's Failure to Provide Needed Behavior Supports Results in High
         Rates of Suspension and Exclusion. .........................................................6

III.  STANDARD OF REVIEW ......................................................................................7

IV.   ARGUMENT ...........................................................................................................8

    A.    The Class Is So Numerous that Joinder of All Members Is Impractical. ...............8

    B.    There Are Questions of Fact or Law Common to the Class. ................................10

    C.    The Named Plaintiff's Claims Are Typical of the Class. .....................................15

    D.    The Named Plaintiff and Their Counsel Will Fairly and Adequately
         Protect the Interests of the Class. ..............................................................16

    E.    Injunctive and Declaratory Relief Are Appropriate Because Defendants
         Have Acted or Refused to Act on Grounds Generally Applicable to the
         Plaintiff Class. ...........................................................................................19

V.    CONCLUSION......................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*1988 Tr. for Allen Child. v. Banner Life Ins. Co.*,
  28 F.4th 513 (4th Cir. 2022) .................................................................................................17

*A.R. v. Conn. State Bd. of Educ.*,
  2020 WL 2092650 (D. Conn. May 1, 2020)..........................................................................19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................................8

*Baxley v. Jividen*,
  2020 WL 7489759 (S.D. W. Va. Dec 21, 2020).....................................................................7

*Black v. Rhone-Poulec, Inc.*,
  173 F.R.D. 156 (S.D. W. Va. 1996)................................................................................16, 17

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ................................................................................................15

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ................................................................................................10

*Davis v. Astrue*,
  250 F.R.D. 476 (N.D. Cal. 2008)..........................................................................................20

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ................................................................................................15

*DL v. Distr. of Columbia*,
  860 F.3d 713, 724 (D.C. Cir. 2017) ..........................................................................13, 14, 19

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................................................15

*Endrew F. v. Douglas Cnty. Sch. Dist.*,
  580 U.S. 386 (2017)..............................................................................................................14

*Fain v. Crouch*,
  342 F.R.D. 109 (S.D. W. Va. 2022).........................................................................................7

*G.F. v. Contra Costa Cnty.*,
  2015 WL 4606078 (N.D. Cal. July 30, 2015)..................................................................10, 14

ii

*G.T. v. Bd. of Educ.*,
  117 F.4th 193 (4th Cir. 2024) ...................................................................... *passim*

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ...........................................................................8

*Harris v. Rainey*,
  299 F.R.D. 486 (W.D. Va. 2014).......................................................................8

*Holsey v. Armour & Co.*,
  743 F.2d 199 (4th Cir. 1984) ...........................................................................8

*In re Serzone Prods. Liab. Litig.*,
  231 F.R.D. 221 (S.D. W. Va. 2005).................................................................19

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  7 F.4th 227 (4th Cir. 2021) ........................................................................8, 10

*J.N. v. Or. Dep't of Educ.*,
  338 F.R.D. 256 (D. Or. 2021) ........................................................................14

*J.R. v. Oxnard Sch. Dist.*,
  2019 WL 4438243 (C.D. Cal. July 30, 2019)...................................................14

*Jamie S. v. Milwaukee Pub. Schs.*,
  668 F.3d 481 (7th Cir. 2012) .........................................................................13

*Jonathan R. v. Justice*,
  344 F.R.D. 294 (S.D. W. Va. 2023).................................................................14

*Kadel v. Folwell*,
  100 F.4th 122 (4th Cir. 2024) ..........................................................................7

*Kenneth R. v. Hassan*,
  293 F.R.D. 254 (D. N.H. 2013) ......................................................................15

*Lester v. Pay Car Mining, Inc.*,
  2018 WL 2728033 (S.D. W. Va. June 6, 2018).................................................17

*Mills v. Bd. of Educ.*,
  348 F. Supp. 866 (D.D.C. 1972) .....................................................................18

*Olmstead v. L.C.*,
  527 U.S. 581 (1999).......................................................................................18

*Pashby v. Cansler*,
  279 F.R.D. 347 (E.D.N.C. 2011), *aff'd on other grounds*, *Pashby v. Delia*, 709
  F.3d 307 (4th Cir. 2013) ..................................................................................8

*Scott v. Clarke,*
    61 F. Supp. 3d 569 (W.D. Va. 2014) ................................................8, 10

*Smith v. Res-Care, Inc.,*
    2015 WL 461529 (S.D. W. Va. Feb. 3, 2015) ........................10, 15, 16

*Thorn v. Jefferson-Pilot Life Ins. Co.,*
    445 F.3d 311 (4th Cir. 2006) ................................................................8

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..............................................10, 12, 19, 20

*Ward v. Dixie Nat'l Life Ins. Co.,*
    595 F.3d 164 (4th Cir. 2010) ......................................................16, 17

*Yates v. NewRez LLC,*
    686 F. Supp. 3d 397 (D. Md. 2023) .............................................17

## STATUTES

ADA § 504, Title II............................................................................13

Americans with Disabilities Act Title II (ADA)................................ *passim*

Developmental Disabilities Assistance and Bill of Rights Act ..................18

IDEA .......................................................................................... *passim*

Rehabilitation Act § 504 ..........................................................9, 10, 11

West Virginia Human Rights Act .................................................11, 12

## RULES

Fed. R. Civ. P.
    23............................................................................................ *passim*
    23(a)(1) ..............................................................................................8
    23(a)(2) ......................................................................................10, 12
    23(a)(4) ............................................................................................16
    23(b)....................................................................................................7
    23(b)(2) ................................................................................... *passim*
    23(d) .................................................................................................19
    23(g)......................................................................................17, 19, 21
    23(g)(1) .............................................................................................17
    23(g)(1)(A) ........................................................................................17
    23(g)(4) .............................................................................................17
    23(a) ....................................................................................................7

## OTHER AUTHORITIES

"*About Kanawha County Schools,*" https://kcs.kana.k12.wv.us/district/about_kcs ........................2

D.J. Losen, et al., *Disabling Inequity: The Urgent Need for Race-Conscious
Resource Remedies* (2021), p. 28 & Table 2, at
https://www.civilrightsproject.ucla.edu/research/k-12-education/special-
education/disabling-inequity-the-urgent-need-for-race-conscious-resource-
remedies/final-Report-03-22-21-v5-corrected.pdf....................................................................7

West Virginia Dept. of Educ., Enrollment/Headcount Enrollment/Enrollment by
Special Education Status Trend,
https://zoomwv.k12.wv.us/Dashboard/dashboard/2056 (last visited May 14,
2025) ..........................................................................................................................................6

*West Virginia Dept. of Education, Discipline/Subgroups/Actions,*
https://zoomwv.k12.wv.us/Dashboard/dashboard/28537 ........................................................6

## I.    INTRODUCTION

This action challenges the ongoing failure by Defendant, the Board of Education of the County of Kanawha (the "BOE"), to effectively address Kanawha County Schools' ("KCS") systemic failures to provide needed behavior supports to students with disabilities, undermining their educational progress and leading to avoidable disciplinary removals from the classroom. *See* Plaintiffs' First Amended Complaint ("Compl."), ECF No. 22. Plaintiffs ask the Court to certify a class of: All Kanawha County School students identified by Kanawha County School District as having disabilities and needing behavior supports but who are not being provided with appropriate therapies to build social skills and self-regulation. Certification of this class is appropriate and needed to secure systemic relief from Defendant's consistent practice of failing to provide such behavior supports, thereby denying students a free and appropriate public education ("FAPE"), in violation of federal and West Virginia law.

The proposed class responds to and satisfies the Fourth Circuit's guidance on class certification in this case. *See G.T. v. Bd. of Educ.*, 117 F.4th 193 (4th Cir. 2024). The Fourth Circuit instructed that to meet Rule 23's commonality requirement, "plaintiffs must 'identify[] a uniformly applied, official policy of the school district, or an unofficial yet well-defined practice, that drives the alleged violation.'" *G.T.*, 117 F.4th at 203 (alteration in original, citation omitted). Plaintiffs' motion for class certification is based on such a "well-defined practice." As shown below, Plaintiffs identify a systemic deficiency that "drives" the violations: KCS's practice of failing to provide class members with therapies needed to make educational and behavioral progress in school – namely, therapies that improve social skills and self-regulation.

## II.    BACKGROUND FACTS

### A.    KCS Does Not Provide Students with Disabilities Necessary Behavioral Supports to Build Social Skills and Self-Regulation.

KCS[1] students with disabilities who have behaviors that interfere with their learning or that of others, like G.T., routinely do not receive the needed behavioral supports that build social skills and self-regulation.  Without those skills, students continue to engage in problematic behaviors and fail to make appropriate academic and behavioral progress.

KCS admits that it has no system in place to review the types of supports provided to students who it has identified as needing behavioral interventions.[2]  If such a system were in place, it would reveal KCS's consistent practice of failing to provide therapies that address the root of the class' challenging behaviors. If the class' behavior is to improve so that they can make appropriate academic and behavioral progress, the District must provide the class with therapies that help them build social skills and self-regulation.  Such therapies are well-recognized and, indeed, are "standard in the field" in school settings when it comes to children with behaviors like those exhibited by the class.  KCS's failure to provide such therapies, contrary to professional norms, is undermining the class members' academic and behavioral progress and denying them FAPE, in violation of federal and West Virginia law.

---

[1] Between the elementary, middle, and high schools, there are 61 schools in the KCS system comprised of 39 elementary schools, 12 middle schools and one alternative center, and eight high schools and one alternative center.  "About Kanawha County Schools," https://kcs.kana.k12.wv.us/district/about_kcs.

[2] *See* Ex. 1, V. Brown Dep. Tr. 21:9-23:5, April 11, 2025 ("Brown Dep.") (explaining that there is no central data collection or monitoring of data compiled by individual student teams; rather, the individual teams collect data on and monitor students' behavior with little or no substantive oversight).

2

The Court is familiar with Dr. Judith Elliot's extensive credentials and thorough review of KCS student files and special education practices. [3]  As Dr. Elliott explained, KCS considers the students in the class to be "choosing" not to behave. S*ee* Ex. 2, Expert Report of Judy Elliott, Ph.D. Rep. at 34 ("Elliott Rep."), ECF No. 120-3.  In other words, KCS sees them as having the skills to behave properly but choosing not to use them.  *Id.* (describing how KCS considers the class to have a "performance deficit").  As Dr. Elliott further explained, however, the students are not "choosing" to behave inappropriately.  Rather, they have "skills deficits" and need support to improve their social skills and self-regulation in order to engage in the appropriate behavior in school.  As a result of KCS's lack of understanding about students' needs (and prejudicial view that these students with disabilities are simply choosing to misbehave), KCS consistently fails to provide the class members with the behavioral support they need: namely, therapies to build social skills and self-regulation. [4]

Dr. Elliott explained that it is "normal and customary" to provide "students who present with the type and severity of behavior issues in the files [she] reviewed" with therapies to build social skills and self-regulation so they can progress academically.  Elliott Rep. at 33–34.  Yet, in her extensive review, Dr. Elliott found "little evidence" that KCS staff and Individualized Education Program ("IEP") teams identify such behavior supports as needed or that students "have access" to such supports.  *Id.* at 34.  Christina Smith, a longtime advocate for students with disabilities in West Virginia and the former Executive Director of The Arc of West Virginia, concurs.  Ex. 10, Declaration of Christina Smith at ¶ 31 ("C.S. Decl."), ECF No. 120-11 ("KCS

---

[3] *See* Ex. 14, Decl. of Dr. Judith Elliott ("I have reviewed Plaintiffs' Renewed Motion for Class Certification and agree with the discussion of my report and findings therein.")

[4] KCS' failure to conduct appropriate and accurate "manifestation" determinations is also explained by this mistaken view of the class.  *See* Elliott Rep. at 23.

does not hold teachers and administrators accountable for providing the behavior supports students with disabilities need to make progress in school. . . KCS staff do not work with IEP teams to . . . identify behavioral services and supports to help students with behavior. As a result, students who need behavior supports do not get the supports they need. I have seen KCS students with disabilities fall behind in school or get in trouble within the school or with law enforcement because they didn't get the supports they needed."). In short, "KCS does not appear to be providing these supports to its students with disabilities." Elliott Rep. at 35.

There is no evidence to demonstrate that this systematic practice has changed or improved since Dr. Elliott's report. In her April 2025 deposition, Special Education Compliance Specialist Holly Samples—who the District identified as overseeing IEPs—confirmed that she had not observed any changes in the types or frequency of behavioral supports being provided to KCS students in recent years. Discussing a "Behavior Support Continuum" developed by KCS in March 2022, Ms. Samples explained that the only change to IEPs that she had noted since the document was issued is that there is now more consistency in the way behavior supports are documented. She has not seen changes, however, in the types or amount of behavior supports being provided. Ex. 2, H. Samples Dep. Tr. 62:9–-23, April 2, 2025 ("April 2025 Samples Dep."). Likewise, KCS's Behavior Compliance Specialist, Vicky Brown, similarly testified that she has not noticed any changes in how behavior supports are currently being implemented compared to four years ago. Brown Dep. 20:13–16. Even with the additional scrutiny of pending litigation, KCS has not made meaningful changes to the behavior supports it provides.

While KCS now tracks whether a student has a behavior plan, KCS still does not monitor the type of behavior services provided to students and whether those supports are actually working. *See* Brown Dep. 20:17-23 (unaware of any changes to monitoring behavior supports compared to

three to four years ago). For example, Ms. Samples pulls approximately forty IEPs at random each month and reviews them to see if they contain the information and signatures required by state policy. April 2025 Samples Dep. 16:3–24. She does not, however, review whether the behavior supports listed in the IEPs are effective or appropriate.[5] Ms. Samples neither interviews members of the IEP team nor reviews additional information in a student's file. *See id.* 15:19-21:6.

Plaintiffs also retained Dr. Sara Boyd to evaluate named plaintiff G.T.—first in 2021 and again in 2025. Expert Report of Sara Boyd, Ph.D. ("Boyd Rep."), ECF No. 120-4; Ex. 4, Supplemental Expert Report of Sara Boyd, Ph.D. ("Boyd Supp. Rep."). As discussed below, in her recent report she found that KCS still does not provide G.T. with appropriate therapies to build needed social skills and self-regulation. *See* Boyd Supp. Rep. at 12–18. Dr. Boyd's report provides further support for Dr. Elliott's conclusions. It is remarkable that KCS continues to deny a named plaintiff such needed therapies.

In sum, KCS still fails provide behavior supports that address the root of the class' behavior problems. To make appropriate academic and behavioral progress, the class needs—but does not receive—therapies to build social skills and self-regulation. Elliott Rep. at 33-34. Because KCS has a consistent and systematic practice of failing to provide the class members with the behavior supports they need, it is appropriate for this case to proceed as a class action.

---

[5] Ms. Samples uses a checklist created by KCS as she reviews the behavior supports listed in an IEP, and the checklist does not address whether supports are appropriate. April 2025 Samples Dep. 22:1–23:8. Rather, if a student is identified in an IEP as needing behavior supports, Ms. Samples will check to see that the IEP contains at least some behavior-related goals and identifies what behavior supports the student will receive and whether an FBA or BIP is attached to the IEP document. *Id.*, KCBOE 061538 (Ex. 5 to April 2025 Samples Dep.). KCS does not monitor 504 Plans in this fashion or otherwise. *See* April 2025 Samples Dep. 39:3–14; Brown Dep. 58:13–15.

**B.**    **KCS's Failure to Provide Needed Behavior Supports Results in High Rates of Suspension and Exclusion.**

As Dr. Elliott noted, "[t]he vast majority of KCS students whose records I reviewed have a history of . . . suspensions, office referrals, and other removals from school or the classroom." Elliott Rep. at 15–16.  Students with disabilities are particularly vulnerable, being 66% more likely to be suspended than their peers without disabilities.[6]  Since this suit was filed, students with disabilities have made up approximately 16-22% of KCS's student population.[7]  Yet, each year they have accounted for approximately 32-40% of all suspensions.[8]

The high rates of suspension and exclusion are explained by KCS's systemic failure to provide students with disabilities the therapies to build social skills and self-regulation that they need to succeed in school.[9]  Behavior Compliance Specialist Vicky Brown, for example, is tasked with reviewing suspension data for students with disabilities.  When she identifies a pattern based on a student's suspension data, she will email the team asking whether the student has behavior supports or a behavior plan in place.  Brown Dep. 26:12–28:1.  However, neither Ms. Brown nor anyone else at the District level investigates whether the supports being provided are appropriate

---

[6] Elliott Rep. at 10 (in the 2018-2019 school year, KCS students with disabilities were 66% more likely to receive suspensions as KCS students without disabilities).

[7] ECF No. 121, at 12 (graph setting out Percentage of Suspensions Given to Students with Disabilities); *see also* West Virginia Dept. of Educ., Enrollment/Headcount Enrollment/Enrollment by Special Education Status Trend, https://zoomwv.k12.wv.us/Dashboard/dashboard/2056 (last visited May 14, 2025)

[8] ECF No. 121, at 12 (graph setting out Percentage of Suspensions Given to Students with Disabilities); *see also* West Virginia Dept. of Education, Discipline/Subgroups/Actions (filter for 'status' under 'population group' and filter for 'School Year'), https://zoomwv.k12.wv.us/Dashboard/dashboard/28537.

[9] The data collected by KCS and provided herein does not account for informal removals, namely, school staff telling parents to pick up their child before the end of the school day.  *See, e.g.*, Ex. 6, Declaration of Kristina E. at ¶ 24 ("K.E. Decl."), ECF No. 120-7; Boyd Rep. at 26, ECF No. 120-4; Ex. 5, H. Samples Dep. Tr. 74:16–84:21, April 1, 2021 ("April 2021 Samples Dep.").

for the child or based on the child's needs.  *Id.*  The consequences of KCS' failure to provide needed behavior supports are profound.  Students lose instructional days due to disability-related behaviors, setting back both their educational and behavioral progress.[10]

## III.    STANDARD OF REVIEW

Class certification is appropriate when: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  In addition, the class must satisfy one of the three sub-provisions of Rule 23(b); here, that "the party opposing the class has acted or refused to act on grounds that apply generally to the class," such that final injunctive or declaratory relief is appropriate.  *See* Fed. R. Civ. P. 23(b)(2).  "Ascertainability" is not a requirement for a (b)(2) class action.[11]

---

[10] Ex. 6, D.J. Losen, et al., *Disabling Inequity: The Urgent Need for Race-Conscious Resource Remedies* (2021), p. 28 & Table 2, at https://www.civilrightsproject.ucla.edu/research/k-12-education/special-education/disabling-inequity-the-urgent-need-for-race-conscious-resource-remedies/final-Report-03-22-21-v5-corrected.pdf.

[11] The Fourth Circuit has recently clarified that, only in (b)(1) and (b)(3) actions must the class be readily ascertainable. There is no such requirement for (b)(2) class actions seeking only declaratory and injunctive relief from a discriminatory policy or practice. *Kadel v. Folwell*, 100 F.4th 122, 160-61 (4th Cir. 2024). As the Fourth circuit explained, 23(b)(2) class actions involve unlawful discrimination "against a class, *usually one whose members are incapable of specific enumeration." Id.* at 161.

Even if the requirement applied, it is satisfied here.  KCS has identified the students with disabilities who need behavior supports, and it can be readily determined whether the students are receiving therapies to build social skills and self-regulation. *See Baxley v. Jividen*, 2020 WL 7489759, at *3 (S.D. W. Va. Dec 21, 2020) (("To satisfy this requirement, the Plaintiffs need only show that the Court and the parties could determine who is or is not a class member."); *Fain v. Crouch*, 342 F.R.D. 109, 113 (S.D. W. Va. 2022) (stating that class members do not have be presently identified).

Certification is especially appropriate in suits, like this one, that seek injunctive relief for civil rights violations. Indeed, suits like this one are precisely the type of cases for which Rule 23(b)(2) certification was intended. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 n.24 (4th Cir. 2006) (observing that "Rule 23(b)(2) was created to facilitate civil rights class actions"); *Scott v. Clarke*, 61 F. Supp. 3d 569, 590- 91 (W.D. Va. 2014) ("Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits.") (citations omitted); *Harris v. Rainey*, 299 F.R.D. 486, 494 (W.D. Va. 2014) (observing that plaintiffs "allege . . . a class-wide violation of civil rights"); *cf. Pashby v. Cansler*, 279 F.R.D. 347, 354 (E.D.N.C. 2011), aff'd on other grounds, *Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013).

When it comes to class certification, the Fourth Circuit encourages district courts to give Rule 23 "'a liberal rather than a restrictive construction'" to "best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (citation omitted). While courts may take a "close look" at the facts of the case at the class certification stage, even at the risk of some overlap into the merits, the Fourth Circuit has instructed that "[t]he likelihood of plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper." *Thorn*, 445 F.3d at 319.

## IV.    ARGUMENT

### A.    The Class Is So Numerous that Joinder of All Members Is Impractical.

The numerosity requirement of Rule 23 is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). When deciding numerosity, there is no "mechanical test" or minimum class member requirement. *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). Yet, the "general guideline" is that a class that includes 40 or more class members presumptively satisfies the numerosity requirement. *In re Zetia (Ezetimibe) Antitrust*

*Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (quoting William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed. 2021)).

The number of putative class members here exceeds that "general guideline." KCS' records show that, for the current school year, at least 345 students with disabilities were identified as needing behavior supports.[12] *See* Ex. 7, KCBOE070410-070426. Of these students, some have Behavior Intervention Plans ("BIPs") or other types of behavioral support plans, but are not receiving appropriate therapies to build social skills and self-regulation to support their academic progress; others, do not have a behavioral support plan at all.[13] *See id.*

Plaintiffs' evidence shows that such students need, but are not provided with, therapies to build social skills and self-regulation. *See supra* Section II.A. As Dr. Elliott explained in her report, behavior supports must include "the positive behavior supports needed to reduce the behavior that is impeding learning." Elliott Rep. at 32. However, KCS provides only "limited" behavior supports that are not designed to, and do not, help students build skills that improve behavior (i.e., enable a child to engage in desired behavior). *See also id.* at 38 (the BIPs in the files reviewed did not identify the skills that a student would need to avoid challenging behaviors and engage in positive behaviors). As a result, Dr. Elliott opined that KCS' behavioral plans "set[] the student up to fail." *Id.* at 33.

---

[12] The 345 number likely understates the number of students with disabilities identified by KCS as needing behavior supports. That number includes only students with IEPs, not 504 Plans. *See* Brown Dep. 58:13-15. Yet, Plaintiffs previously identified 240 students with disabilities whose need for behavior supports was identified in a Section 504 plan. Ex. 12, "Section 504 Student Spreadsheet", ECF No. 120-13.

[13] At least 124 students are listed as not having a BIP/behavioral support plan ("BSP") in Mfiles, KCS's record storage system. *See* Ex. 7, KCBOE 070410–70426. An additional 22 students are listed as having a BIP or BSP that was not updated for the 2024-2025 school year. *Id.* (That data is marked in red in the BIP/BSP column of the spreadsheet.)

Given Plaintiffs' evidence that KCS, on a consistent and systemic basis, fails to provide such students with therapies to build social skills and self-regulation, *see id.*, it is clear that far more than 40 KCS students are not receiving this needed intervention and that numerous additional students in the future will fail to receive it as well.

Thus, the numerosity requirement is satisfied here. *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th at 234 (40 or more class members presumptively satisfies numerosity); *G.F. v. Contra Costa Cnty.*, 2015 WL 4606078, at *9 (N.D. Cal. July 30, 2015) (finding numerosity satisfied in a class action alleging violations of IDEA, ADA, and Section 504 where "the class contains at least 40 youth with disabilities currently").

### B.    There Are Questions of Fact or Law Common to the Class.

To meet Rule 23's commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A single common question will suffice," so long as the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *G.T.*, 117 F.4th at 202 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The threshold requirement of commonality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). This "standard is a liberal one that cannot be defeated by the mere existence of some factual variances among class members." *Smith v. Res-Care, Inc.*, 2015 WL 461529, at *11 (S.D. W. Va. Feb. 3, 2015). Moreover, the "commonality element is more easily established in proposed class actions seeking injunctive or declaratory relief," as "suits for injunctive relief by their very nature present common questions of law and fact." *Scott*, 61 F. Supp. 3d at 585(internal citation omitted).

The U.S. Court of Appeals for the Fourth Circuit held that to meet the commonality requirement here, "plaintiffs must 'identify[] a uniformly applied, official policy of the school

district, or an unofficial yet well-defined practice, that drives the alleged violation.'" *G.T.*, 117 F.4th at 203 (alteration in original, citation omitted). Plaintiffs' motion for class certification rests on such a "well-defined practice." It identifies a systemic deficiency at the core, and, in the words of the Fourth Circuit, "that drives" the District's legal violations. *See id.* at 205. KCS' systematic practice of failing to provide therapies needed to build social skills and self-regulation undermines the educational and behavioral progress of the class and constitutes a violation of both federal and West Virginia law.[14]

Plaintiffs allege that the District's "unofficial yet well-defined practice" of denying such therapies, in violation of federal and state law, raises common factual and legal questions, including:

1. Whether KCS has systematically failed to provide class members with appropriate therapies to build social skills and self-regulation;

2. Whether such therapies are required "related services" under IDEA and/or Section 504;

3. Whether the failure to provide appropriate therapies to build social skills and self-regulation is or has resulted in a denial of FAPE;

4. Whether the District's systematic failure to provide the class with appropriate therapies to build social skills and self-regulation violates the IDEA, and/or Section 504 of the Rehabilitation Act;

5. Whether the District's systematic failure to provide the class with appropriate

---

[14] Plaintiffs allege violations of the IDEA, *see* Compl. at ¶¶ 156-159 (including denial of FAPE); Section 504 of the Rehabilitation Act, *id.* at ¶¶ 160-164 (including denial of FAPE, and equal educational opportunity); Title II of the Americans with Disabilities Act (ADA), *id.* at 165-170 (including denial of equal opportunity); and the West Virginia Human Rights Act, *see id.* at 171-174.

therapies to build social skills and self-regulation violates Title II of the ADA; and

6.    Whether the District's systematic failure to provide the class with appropriate therapies to build social skills and self-regulation violates the West Virginia Human Rights Act.

The common answers to these questions—that is, the determination of their "truth or falsity"— would "in one stroke" resolve issues "central to the validity" of Plaintiffs' claims. *See Wal-Mart Stores*, 564 U.S. at 350.  Accordingly, the requirements of Rule 23(a)(2) have been met. *Id.*; *G.T*, 117 F.4th at 204–05.

In support of their Motion, Plaintiffs have submitted an expert declaration from Dr. Judy Elliott that describes KCS's systematic practice of failing to provide appropriate therapies to students with disabilities who have been identified as needing behavior supports.  Based on her decades of experience in special education and school administration, and on her review of 332 individual files of KCS students with disabilities, Dr. Elliott determined that KCS is not providing "[n]ormal and customary evidence-based supports" to KCS students.  Elliott Rep. at 33–34.  In particular, Dr. Elliott found that students needed, but were not receiving, therapies to address the root causes of their behavior and needed training in social skills and self-regulation.  *Id.* at 34 ("little evidence" of these services).  Remarkably, Dr. Elliott found that none of the over 300 IEPs and 504 Plans she reviewed provided for any "'behavioral' related services." *Id.* at 35.  She explained that the limited related services that were listed "occasionally" in the IEPs she reviewed, such as a transportation aide, speech language therapy, or occupational therapy, "alone are not enough to help the KCS students" in the class "develop skills to address the root causes of their behavior issues." *Id.* at 35–36.

12

Dr. Elliott further noted that in the files she reviewed, "[v]ery few" KCS BIPs indicated that students would receive training in social skills and self-regulation. Elliott Rep. at 36. She also noted that such skills are "need[ed] in order to learn in general education environments with other students." *Id.* She found the behavior services provided to class members "inadequate to meet the severity of the student's behavior problems." *Id.* at 33.

Dr. Elliott's findings are bolstered by Dr. Sara Boyd's evaluation of Named Plaintiff G.T., which found that, in the last 4 years, KCS has failed to provide G.T. with appropriate therapies to build social skills and self-regulation, which has impeded his academic progress. *See* Boyd Supp. Rep. at 12–18.[15]

In sum, plaintiffs have identified an unofficial but widespread practice that serves as the common driver—the "glue" that ties together the class members' claims. *See G.T.*, 117 F.4th at 205 (quoting *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 498 (7th Cir. 2012)) (internal quotation marks omitted). The single "practice that bridges all [class members'] claims" is KCS' systemic failure to provide appropriate therapies to build social skills and self-regulation to students in the class—denying class members FAPE and equal educational opportunity in violation of the IDEA, Section 504, Title II of the ADA, and/or state law. *See id.* at 204.

Unlike the class that was rejected by the court of appeals, all members of the current proposed class are at the same "step[] in the special education process" and are therefore similarly harmed by KCS' deficient practice. *G.T.*, 117 F.4th at 206; *see also DL v. Distr. of Columbia*, 860 F.3d 713, 724 (D.C. Cir. 2017) (affirming certification of subclasses that were each defined "by

---

[15] According to Vicky Brown, the KCS Behavior Compliance Specialist whose role may have been created in response to this lawsuit, the completion of FBAs and BIPs has not "changed much" since she was hired three years ago. Brown Dep. at 17:9–13. Ms. Brown was able to identify no differences in how behavior supports are implemented now, compared to how they were implemented when she served as an ABA Specialist for KCS several years ago. *Id.* at 20:13–16.

13

reference to a . . . specific stage of the special education process" and experienced "common harms, susceptible to common proof, and curable by a single injunction") (cleaned up).  All members of the proposed class are (1) KCS students with disabilities, (2) who have been identified by KCS as needing behavior supports, and (3) who have not been provided with appropriate therapies to build social skills and self-regulation.  They are all subject to the same practice of the District, which causes them similar harm.  Class members have not developed the requisite social skills and self-regulation skills needed to improve their behavior and make appropriate educational progress.  *See Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 404 (2017); *see also* Elliott Rep. at 47; Boyd Supp. Rep. at 17–18.  Moreover, as Dr. Elliott concluded, class members will continue to face suspensions and other classroom exclusions if they do not receive appropriate therapies to build social skills and self-regulation.  *See* Elliott Rep. at 47.

In analogous cases involving children's rights under the IDEA or federal disability discrimination law, courts have found that a systematic denial, like the one alleged here, raises common questions of fact and law that satisfy Rule 23.  *See, e.g.*, *DL*, 860 F.3d at 724–25 (finding common questions, including whether students were denied FAPE because of particular practices); *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 265–72 (D. Or. 2021) (finding common question whether defendant's systemic use of shortened school days denied FAPE and violated federal law); *J.R. v. Oxnard Sch. Dist.*, 2019 WL 4438243, at *25 (C.D. Cal. July 30, 2019) (finding common question whether district's untimely practices violated federal law); *G.F. v. Contra Costa Cnty.*, 2015 WL 4606078, at *9–10 (N.D. Cal. July 30, 2015) (finding common questions whether particular practices violate federal law); *Jonathan R. v. Justice*, 344 F.R.D. 294, 313 (S.D. W. Va. 2023) (finding common questions arising from alleged systemic failure to provide community-based services to foster children with disabilities, including whether provision of services were in

14

fact deficient and violated federal disability law); *Kenneth R. v. Hassan*, 293 F.R.D. 254, 268 (D. N.H. 2013) (finding common questions, including whether there was a systemic deficiency in state's community-based mental health services and whether that deficiency led to continued unnecessary institutionalization of class members).

### C.    The Named Plaintiff's Claims Are Typical of the Class.

To meet the typicality requirement of Rule 23, a named plaintiff must "'possess the same interest and suffer the same injury as the class members.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citation omitted).  The named plaintiff's claims must "fairly encompass those of the … class," although the class representative and class members "need not have identical factual and legal claims." *Smith v. Res-Care, Inc.*, 2015 WL 461529, at *5 (S.D. W.Va. Feb. 3, 2015); *see also Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) ("We . . . do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects.").  "Differing factual scenarios resulting in a claim of the same nature as other class members do[] not defeat typicality." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9 (9th Cir. 2011).

Typicality is satisfied here because named plaintiff G.T.'s claims are essentially identical to those of the class.  G.T. is a KCS student with a disability who has been identified by KCS as needing behavior supports.  However, as Dr. Boyd, who recently evaluated G.T., reports, he is not being provided with appropriate therapies to build social skills and self-regulation, which has impeded his academic progress.  Boyd Supp. Report at 8.  This is true despite KCS's acknowledgement that G.T. struggles with managing his behavior. *Id.* at 15–16.  Moreover, as Dr. Boyd noted, this deficiency in the behavior supports provided to G.T. is a deficiency that Dr. Elliott found endemic to the behavior supports KCS provides.  Boyd Supp. Report at 18; *see supra* at pp. 2–4, 11–12 (describing Dr. Elliott's report).  The inadequacy of the behavior supports provided to

15

G.T. mirror the inadequacy of the behavior supports provided to the class, and G.T.'s claims are virtually identical to the claims of the absent class members. KCS has failed to provide G.T., like each absent class member, with appropriate therapies to build social skills and self-regulation. As with the class, that failure has interfered with G.T.'s educational and behavioral progress, in violation of federal and state law.[16]

Even if there are minor factual differences between G.T.'s experiences and those of the other class members, G.T.'s claims "fairly encompass" those of the class, as they arise out of a systemic and consistent practice by KCS of failing to provide appropriate therapies to students who have been identified as needing behavior supports. *Smith*, 2015 WL 461529, at *5. Because G.T. has been subject to the same unlawful systemic practice that Plaintiffs allege harms the Plaintiff Class, his claims are typical of the class for purposes of Rule 23.

### D. The Named Plaintiff and Their Counsel Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). When evaluating this requirement, "the Court must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves." *Black v. Rhone-Poulec*, *Inc.*, 173 F.R.D. 156, 162 (S.D. W. Va. 1996). The two predominant considerations "for the Rule 23(a)(4) prerequisite . . . are (1) absence of conflict and (2) assurance of vigorous prosecution." *Id*.

There is no conflict between G.T.'s interests and those of other class members. *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (finding claims posed no potential

---

[16] Also, as a result of this practice, G.T. has been suspended and excluded from school on multiple occasions, *see* Boyd Rep. at 19–20, Boyd Supp. Rep. at 10, a harm widely experienced by the class, *see supra* at pp. 5–6.

for conflicting interests); *1988 Tr. for Allen Child. v. Banner Life Ins. Co.*, 28 F.4th 513, 524 (4th Cir. 2022) (same); Ex. 4, Declaration of Michelle T. at ¶ 4 ("M.T. Decl."), ECF No. 120-5.  Both G.T. and the class "share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants]." *Ward*, 595 F.2d at 180; *see Lester v. Pay Car Mining, Inc.*, 2018 WL 2728033, at *7 (S.D. W. Va. June 6, 2018) (class representative adequately represents proposed class where his claim would stand or fall on the same issues as the rest of the class).

Moreover, G.T. will vigorously prosecute this matter and, with the help of his parents, will actively participate in this litigation.  *See* M.T. Decl. at ¶ 3.[17]

In addition, G.T.'s counsel will adequately and fairly protect the class, and respectfully request to be appointed counsel for the Plaintiff Class.[18]  In appointing class counsel, the Court should consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Here, each factor favors the appointment of G.T.'s counsel as class counsel.[19]

---

[17] That G.T. has a disability does not defeat the adequacy of G.T. as a class representative.  *See, e.g., Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 410 (D. Md. 2023); *Black*, 173 F.R.D. at 163.

[18] Rule 23(g) provides that, "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel," who "must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1) & (4).

[19] Moreover, "counsel's competence and experience are presumed adequate in the absence of contrary proof."  *Black*, 173 F.R.D. at 162.

Lydia C. Milnes and Blaire Malkin work for Mountain State Justice, Inc., which has a long history of and substantial expertise in class litigation on behalf of low-income West Virginians. *See* Ex. 9, Decl. of Lydia C. Milnes at ¶¶ 4-5.

Ira A. Burnim, Megan E. Schuller, and Rebecca Raftery work at the Judge David L. Bazelon Center for Mental Health Law, a leader in the field of mental disability law. The Center has played a major role in litigating complex cases seeking to reform public services for children and adults with mental disabilities, including *Mills v. Bd. of Educ.*, 348 F. Supp. 866 (D.D.C. 1972), which established a constitutional right to education for children with disabilities and was a precedent for the IDEA, and *Olmstead v. L.C.*, 527 U.S. 581 (1999), in which the U.S. Supreme Court held that unnecessary segregation is discrimination prohibited by the ADA. *See* Ex. 10, Decl. of Ira A. Burnim at ¶¶ 5-6.

Shira Wakschlag and Evan Monod work at The Arc of the United States, a large national organization advocating for and with people with intellectual and developmental disabilities that engages in complex federal court litigation nationwide. *See* Ex. 11, Decl. of Shira Wakschlag at ¶¶ 8-10.

Robin Hulshizer, Kirstin Scheffler Do, Karen Frankenthal, and Jaime Zucker practice at Latham & Watkins LLP, a global law firm with substantial experience in federal court litigation and skill in the vigorous prosecution and management of class action litigation. *See* Ex. 12, Decl. of Robin Hulshizer at ¶ 4.

Nicholas Ward practices at Disability Rights West Virginia, the designated protection and advocacy agency for the state of West Virginia pursuant to the Developmental Disabilities Assistance and Bill of Rights Act. The organization has extensive experience and expertise representing individuals with disabilities to cause substantial, systemic changes that improve

access and services for West Virginians with disabilities. *See* Ex. 13, Decl. of Nicholas Ward at ¶ 2.

G.T.'s counsel have the experience, knowledge, and resources to pursue this litigation. They are "qualified, experienced and generally able to conduct the litigation." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W. Va. 2005).  And, as the Court is aware from prior proceedings, they undertook extensive efforts to identify and investigate potential claims in this matter, including by conducting interviews, initiating due process proceedings, engaging expert witnesses, and analyzing available documents.

Accordingly, the requirements of Rule 23(d) are met, and G.T.'s counsel should be appointed class counsel pursuant to Rule 23(g).

### E.    Injunctive and Declaratory Relief Are Appropriate Because Defendants Have Acted or Refused to Act on Grounds Generally Applicable to the Plaintiff Class.

Plaintiffs seek to certify the proposed class under Rule 23(b)(2), which applies when the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

In this case, the Plaintiff Class is certifiable under Rule 23(b)(2) because Plaintiffs have alleged civil rights violations arising from KCS's unofficial yet well-defined practice of failing to provide appropriate therapies to build social skills and self-regulation.  *See, e.g.*, *DL*, 860 F.3d at 726 (certifying class action where plaintiffs alleged systemic failure to provide special education services in violation of the IDEA and the ADA and finding that a Rule 23(b)(2) class "was designed for exactly this sort of suit"); *A.R. v. Conn. State Bd. of Educ.*, 2020 WL 2092650, at *8– 9 (D. Conn. May 1, 2020) (certifying class action challenging age limitation for receipt of special education); *see also Wal-Mart*, 564 U.S. at361 ("'[C]ivil rights cases against parties charged with

19

unlawful class discrimination are prime examples' of what (b)(2) is meant to capture.") (citation omitted).

Plaintiffs seek injunctive relief from a practice that prevents them from receiving adequate behavioral supports. *See* Mem. Op. and Order at 13, ECF No. 46 ("These allegations are structural in nature, and the experiences of K.M. and G.T. demonstrate the inadequacy of the relief available through due process complaints.… The Plaintiffs seek structural relief.…")

Moreover, remedying the systemic violations that Plaintiffs have identified would not require individualized relief. While KCS may have to perform an individualized inquiry to determine what therapies to provide to each class member to build social skills and self-regulation, this Court need not do the same in issuing the injunctive relief Plaintiffs seek. *See Davis v. Astrue*, 250 F.R.D. 476, 487 (N.D. Cal. 2008) (explaining that "the individualized determination referenced by this court is one that the agency . . . is required to make under the Rehabilitation Act in considering the particular needs of its beneficiaries. The court need not make any individualized determinations."). Rather, the consistent and systematic practice that the motion for class certification targets can be enjoined or declared unlawful to the class members as a whole. *See Wal-Mart*, 564 U.S. at 360.

KCS can change its policies and practices to better ensure that the class receives appropriate therapies to build social skills and self-regulation. If the Court finds upon trial that KCS has violated the law by failing to provide such therapies, it can and will direct KCS to make structural changes to remedy the legal violation, which is precisely the kind of relief for which Rule 23(b)(2) was designed.

Thus, certification of the Plaintiff Class plainly satisfies Rule 23(b)(2).

## V.    CONCLUSION

As set forth herein, Plaintiffs respectfully request that this Court certify this case as a class action pursuant to FED. R. CIV. P. 23(a) and 23(b)(2) and appoint the undersigned as class counsel pursuant to FED. R. CIV. P. 23(g).

Respectfully submitted by:

Plaintiffs G.T., *by his parents Michelle and Jamie T. on behalf of themselves and all similarly situated individuals,* and THE ARC OF WEST VIRGINIA

*/s/ Lydia C. Milnes*
Lydia C. Milnes (WVSB #10598)
Blaire L. Malkin (WVSB #10671)
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, West Virginia 25301
Telephone: (304) 344-3144

Robin Hulshizer (IL Bar ID No. 6230994)
Kirstin Scheffler Do (IL Bar ID No. 6315311)
Karen Frankenthal (IL Bar ID No. 6327168)
Jaime Zucker (IL Bar ID No. 6333596)
Latham & Watkins LLP
330 N. Wabash Avenue, Suite 2800
Chicago, Illinois 60611

Megan E. Schuller (DC Bar No. 90023318)
Ira A. Burnim (DC Bar No. 406154)
Rebecca Raftery (DC Bar No. 90012242)
Judge David L. Bazelon Center for Mental Health Law
1101 15th Street NW, Suite 205
Washington, DC 20005

Shira Wakschlag (DC Bar No. 1025737)
Evan Monod (DC Bar No. 1764961)
The Arc of the United States
2000 Pennsylvania Ave., NW, Suite 500
Washington, DC 20006

Nicholas Ward (WV Bar No. 13703)
Disability Rights of West Virginia
5088 Washington St. W, St. 300
Charleston, WV 25313
Phone: (304) 346.0847