IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

G.T., *by his parents Michelle and Jamie T. on behalf of himself and all similarly situated individuals*, et al.,

                Plaintiffs,

v.                                    CIVIL ACTION NO.   2:20-cv-00057

THE BOARD OF EDUCATION OF THE
COUNTY OF KANAWHA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiffs' Motion for Class Certification* (Document 222), the *Memorandum in Support of Plaintiffs' Motion for Class Certification* (Document 224), the *Defendant's Response in Opposition to Plaintiffs' Motion for Class Certification* (Document 252), and the *Plaintiffs' Reply in Support of Their Motion for Class Certification* (Document 260), as well as all exhibits, including those filed under seal.

The Court has additionally reviewed the *Plaintiffs' Motion to File Documents Under Seal* (Document 261), seeking to seal documents that include personal details regarding minor children. Finding that the interest in maintaining the privacy of minors substantially outweighs any public right of access, the Court **ORDERS** that the *Motion* (Document 261) be **GRANTED** and that Documents 261-1 and 261-2 be **FILED UNDER SEAL**.

The Court has also reviewed the *Defendant's Motion to Strike, or, in the Alternative, Motion for Leave to File Sur-Response* (Document 263), the *Plaintiffs' Opposition to Defendant's*

*Motion to Strike* (Document 266), and the *Reply in Support of Defendant's Motion to Strike, or, in the Alternative, Motion for Leave to File Sur-Response* (Document 268). The Defendant argues that the *Rebuttal Report and Supplemental Disclosures of Judy Elliott, Ph.D.* (Document 260-3) of June 20, 2025, was not timely disclosed. Dr. Elliott's report addresses changes to the Defendant's policies, practices, and procedures since her 2021 report. The Defendant argues that it was surprised by the report and had insufficient opportunity to cure the surprise because the supplemental report was disclosed and relied upon within the Plaintiff's reply brief. It further argues that the report is not important to the class certification issues. In response to the Plaintiffs' characterization of the report as a rebuttal to its experts, who offered opinions on recent improvements to KCS' programs for students with disabilities, the Defendant emphasizes that the Plaintiffs have the burden of proof. Should the Court decline to strike Dr. Elliott's supplemental report, the Defendant requests leave to file an attached surreply addressing it.

The Plaintiffs note that the deadline for the Defendant to respond to the Plaintiffs' motion for class certification fell a week prior to the expert rebuttal deadline for both parties. Therefore, when the Defendant disclosed expert reports opining that KCS had made changes that altered the analysis contained in Dr. Elliott's 2021 report, the Plaintiffs asked Dr. Elliott to review those expert reports and respond to them. To the extent any portion of Dr. Elliott's supplemental report is not properly considered rebuttal, the Plaintiffs argue it falls within their duty to supplement.

The Court imposed a brief timeline for supplementing discovery and briefing class certification following remand. The parties had limited time to exchange discovery and resolve disputes prior to briefing the renewed motion for class certification. The Court finds that Dr. Elliott's supplemental report, primarily filed as a rebuttal to the Defendant's expert reports, should

be admitted. Any prejudice can be cured by permitting the Defendant's sur-response. The Court **ORDERS** that the *Defendant's Motion to Strike, or, in the Alternative, Motion for Leave to File Sur-Response* (Document 263) be **GRANTED** to the extent it requests leave to file a sur-response, and **ORDERS** that the *Defendant's Sur-Response in Opposition to Plaintiffs' Motion for Class Certification* (Document 263-1) be **FILED**.

## PROCEDURAL HISTORY

The Plaintiffs, G.T., K.M., and The Arc of West Virginia, allege that the Defendant, the Board of Education of the County of Kanawha (referred to herein as the Board or KCS, for Kanawha County Schools), violates the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.* (now codified at W. Va. Code § 16B-17-1 *et seq.*), by failing to adequately support students with disabilities. G.T. and K.M. are students with Individualized Education Plans (IEPs), although the Plaintiffs have not focused on K.M. following remand. The Arc of West Virginia is a not-for-profit membership organization focused on disability rights, particularly for those with intellectual and developmental disabilities. Among other services, it provides support for families of children receiving special education services at public schools in West Virginia. The Plaintiffs initiated this action with a *Class Action Complaint* (Document 1) filed on January 24, 2020, which was amended on April 10, 2020. The Plaintiffs seek declaratory and injunctive relief. On August 24, 2021, the Court entered a *Memorandum Opinion and Order* (Document 139) granting the Plaintiffs' motion to certify the following class: All Kanawha County

Schools students with disabilities who need behavior supports and have experienced disciplinary removals from any classroom.

The Defendant appealed, and the Fourth Circuit issued an opinion on September 5, 2024, finding that the class failed to satisfy Rule 23(a)(2)'s commonality prerequisite. The court explained that "to meet the commonality prerequisite for class certification, plaintiffs in an IDEA case like this one must identify a 'uniformly applied, official policy of the school district, or an unofficial yet well-defined practice, that drives the alleged violation.'" (4th Cir. Op. at 18, quoting *Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 29 (1st Cir. 2019.)) The Fourth Circuit noted that members of the class were "at different stages of the special education process," with allegations that KCS both failed to identify students who needed behavioral supports and failed to provide adequate supports to students who had been identified as requiring behavioral supports, including the class representatives. *Id.* at 20. The court found that the allegations related to multiple failures, rather than a single policy or practice impacting all class members. In addition, resolution of some of the shortcomings identified by the Plaintiffs would "depend on [a] particular child's unique needs and IEP goals" or require individualized review of each child's disciplinary removals from the classroom. *Id.* at 22. The Fourth Circuit suggested that the Court consider whether "redefining the proposed class—such as by establishing smaller subclasses—can satisfy Rule 23's commonality requirement" on remand. *Id.* at 26.

Following remand, the Court permitted the parties to engage in additional class related discovery, and the Plaintiffs filed their renewed motion for class certification. The Plaintiffs now seek to certify a class defined as: "All Kanawha County School students identified by Kanawha

County School District as having disabilities and needing behavior supports but who are not being provided with appropriate therapies to build social skills and self-regulation." (Pls.' Mot. at 1.)

## FACTS

The Court's previous opinion in this matter extensively detailed the factual evidence submitted by the parties, as did the Fourth Circuit's opinion. The Court hereby incorporates those factual findings and will provide only a summary herein. In addition, the factual summary herein will reflect the updates provided by the parties regarding G.T., as well as changes KCS has made to its practices involving students with disabilities who need behavioral supports.

KCS implemented an improvement plan after having "a significant discrepancy in out-of-school suspensions on the basis of disability and race and ethnicity" in the 2021-2022 school year. (Def.'s Resp. at 3.) Prior to the improvement plan, when the parties previously submitted evidence related to class certification, the Court found that the Plaintiffs had submitted substantial evidence that students with disabilities were suspended or removed from the classroom at a disproportionate rate. The Plaintiffs' expert, Dr. Judy Elliott, previously calculated that the probability that a general education student would be suspended was 0.33, and the probability that a student with a disability would be suspended was 0.55. Using the Defendant's more recent numbers, she found that students with disabilities are now approximately twice as likely to be suspended as students without identified disabilities. Dr. Elliott previously found variation between schools and between students, with some students with disabilities having dozens of suspensions. Students also frequently had disciplinary removals from classrooms other than suspensions, including lunch detention, office referrals, and parent pick-up requests.

5

Dr. Elliott reviewed a selection of IEPs and Section 504 plans for students with disabilities and challenging behaviors. She found the plans often lacked sufficient behavioral support and failed to adequately and appropriately address behavioral needs. Even where behavioral supports are included in an IEP, they are not appropriately implemented, and Dr. Elliott found that the poor implementation persists today. The behavioral supports provided at KCS tend to be directed at performance deficits, with an implicit assumption that the student is capable of performing the desired behavior but chooses not to. In her supplemental report, she indicated that KCS consistently fails to "provide appropriate therapies to help students with disabilities build social skills and self-regulation." (Elliott Suppl. Rep. at 1.) In addition, she states that "KCS lacks a district-wide data system that would allow it to assess its provision of behavior supports, including therapies to build social skills and self-regulation." (*Id.* at 11.)

KCS presented evidence regarding the supportive services provided to students with disabilities and the personnel involved in both developing IEPs and Behavior Management Plans and those involved in directly supporting students. It also presented evidence regarding the individualized process involved in developing IEPs and BIPs (Behavior Intervention Plans). Since the previous motion for class certification, KCS hired a Special Education Compliance Specialist, who supports and trains school-based IEP teams and monitors IEPs, and a Behavior Compliance Specialist who provides support and training regarding behavior-related services for students with disabilities. Following implementation of the improvement plan, the West Virginia Department of Education reviewed three randomly selected students who were suspended more than ten school days for the 2023-2024 school year and found that the files passed review. (WVDE Clearance Review, Document 252-3 at 3.) KCS "met the state target for suspension or

expulsion of students with disabilities for more than ten days compared to non-disabled peers." (Annual Desk Audit, Document 252-4 at 2.)

The named Plaintiff, G.T.,[1] receives special education services in Kanawha County. He has been diagnosed with autism and attention deficit hyperactivity disorder (ADHD). The psychologist who reviewed the services provided to G.T., Dr. Sara Boyd, submitted a supplemental report wherein she opined that KCS continues to fail to provide him with appropriate services necessary to improve his social skills and self-regulation. (Boyd Suppl. Rep. at 1-2) (Document 222-5.) She indicated that the Functional Behavior Assessments and BIPs for G.T. were of mixed quality and found that use of professionally accepted practices in those areas would have resulted in improved self-regulation skills for G.T., with a corresponding reduction or elimination in the use of restraints, informal school removals, disciplinary removals, and use of a segregated classroom. (*Id.* at 2.) The parties agree that G.T. had fewer disciplinary incidents during the 2022-2023 and 2023-2024 school years, but an increase in serious behavioral incidents in the 2024-2025 school year, including threats of harm to himself and others. Dr. Boyd explains that the school records reveal frequent requests to G.T.'s mother to come to the school to help calm him, as well as reports that one teacher could sometimes intervene when G.T. was bothered by something before any escalation, but KCS made no effort to identify the strategies used that could be replicated by other school personnel. Dr. Boyd detailed specific therapies and interventions that would assist G.T. in building social skills and self-regulation.

KCS presented evidence that G.T. does receive significant instruction in social skills and self-regulation. It reviewed and updated G.T.'s BIP multiple times in 2025 in response to

---

[1] The other named Plaintiff, K.M., is not discussed in the Plaintiff's updated briefing, and so the Court has not addressed that student.

7

escalating behavioral issues. During the spring of 2025, as the parties were submitting briefing in this matter, G.T.'s situation was rapidly evolving, with updates to his BIP as recent as May 13, 2025. His classroom teacher described the services he receives and noted that behavioral supports in her autism classroom are quite individualized and developed based on frequent consultation with a BCBA (Board Certified Behavioral Analyst) who regularly spends time observing her classroom. For G.T., specifically, the teacher described frequent contact with the BCBA to develop behavior supports, as he has higher behavioral needs than her other students.

## DISCUSSION

The Plaintiffs request certification of a proposed class of: "All Kanawha County School students identified by Kanawha County School District as having disabilities and needing behavior supports but who are not being provided with appropriate therapies to build social skills and self-regulation." (Pls.' Mem. at 7.) They contend that their revised proposed class "satisfies the Fourth Circuit's guidance on class certification in this case." (*Id.*) They argue that they have identified a systematic practice of failing to provide students with disabilities with appropriate therapies to build social skills and self-regulation, which in turn prevents those children from making appropriate behavioral and academic progress. The Plaintiffs contend that the proposed class consists of more than 300 students with disabilities identified as needing behavior supports in IEPs, as well as hundreds of students with disabilities identified as needing behavior supports with Section 504 plans. They rely on Dr. Elliott's reports, citing her conclusion that KCS is not providing supportive services and therapies that are both necessary to the students and customarily provided elsewhere.

The Plaintiffs assert the following common factual and legal questions:

8

1. Whether KCS has systematically failed to provide class members with appropriate therapies to build social skills and self-regulation;
2. Whether such therapies are required 'related services' under IDEA and/or Section 504;
3. Whether the failure to provide appropriate therapies to build social skills and self-regulation is or has resulted in a denial of FAPE [Free Appropriate Public Education];
4. Whether the District's systematic failure to provide the class with appropriate therapies to build social skills and self-regulation violates the IDEA, and/or Section 504 of the Rehabilitation Act;
5. Whether the District's systematic failure to provide the class with appropriate therapies to build social skills and self-regulation violates Title II of the ADA; and
6. Whether the District's systematic failure to provide the class with appropriate therapies to build social skills and self-regulation violates the West Virginia Human Rights Act.

(*Id.* at 11-12.) They contend that the current proposed class resolves the Fourth Circuit's concerns with the prior class because it addresses a single practice impacting students at the same step in the special education process, and the purported class members all suffer similar harm. They further assert that G.T.'s claims involve the same interest and injury as those of the purported class members: "he is not being provided with appropriate therapies to build social skills and self-regulation, which has impeded his academic progress." (*Id.* at 15.) The Plaintiffs argue that G.T. and his counsel will vigorously prosecute this matter and adequately and fairly protect the interests of the class. Finally, they argue that injunctive and declaratory relief are appropriate to correct the violations as to the class of students with disabilities.

The Defendant contends that the Plaintiffs' proposed class fails for many of the reasons cited by the Fourth Circuit in finding that certification of the previous proposed class constituted an abuse of discretion. It contends that "there is no uniformly applied policy or well-defined practice harming students with disabilities at KCS." (Def.'s Resp. at 1.) It argues that social

skills and self-regulation services encompass a broad range of services, provided in a range of settings, based on an individualized assessment of each student, and a failure to provide a particular service to a particular student could result from a broad range of causes. "Whether a student receives 'appropriate therapies' hinges on a host of individual factors that defy ready or objective determination," in the Defendant's view. (*Id.* at 14.) In addition to arguing that the proposed class does not meet the requirements set forth by the Fourth Circuit, KCS asserts that its policies and practices comply with all applicable laws and emphasizes that it implemented an improvement plan related to reducing disciplinary disparities for students with disabilities in the years since this case was filed. KCS argues that it made substantial improvements to the services offered to students with disabilities, including increased monitoring and review of IEPs and related plans and assessments, and suspension rates for students with disabilities decreased. It contends that out of school suspensions for students with disabilities "is increasingly reserved for imminently dangerous, illegal, or aggressive behaviors" and for the most recent school year with comparison data, 2023-2024, "KCS has less disparate rates of suspension for students with disabilities than the state-wide rate." (*Id.* at 6.)

The Defendant explains that it "provides social skills services as credit-earning, curriculum-based instruction," while self-regulation services are defined as "supplemental or related services" that are "generally not [provided] as a direct curriculum-based instruction." (*Id.* at 8-9.) It contends that G.T. receives 225 minutes of social skills instructional curriculum per week. The Defendant also notes repeated meetings and revisions of his BIP in 2025 in response to escalating behavior issues. Prior to the 2024-2025 school year, G.T. had a lengthy period of progress and improvement. Discussing the services provided to G.T., the Defendant argues that

10

"[d]etermining whether there is *even one* member of this putative class warps certification into a minitrial on the merits of G.T.'s individual contentions." (*Id.* at 15.) The Defendant further contends that the Plaintiffs have not described the injunction they seek, instead relying on Dr. Elliott's envisioned ongoing collaborative improvement process. It next argues that class claims cannot proceed without exhausting administrative remedies, noting that the claims exhausted by G.T. and K.M., in which they challenged the quality of services they received in the 2017-2018 and 2018-2019 school years, did not encompass the current class claims or reflect the current practices at KCS.

In reply, the Plaintiffs contend that KCS's purported improvements should be considered at summary judgment or trial, not at the class certification stage. They argue that "the fact that individual KCS student with disabilities will need different interventions to build social skills and self-regulation does not matter" because the case will result in a "class-wide answer…as to whether KCS's practices for providing such interventions complies with the law." (Pls.' Reply at 3.) They emphasize that the relief they are seeking is a "systemic change in KCS's practices for all students in the class" rather than "individualized services for specific students." (*Id.* at 8.) The Plaintiffs argue that G.T.'s behavior regression at the time of briefing reflected the ongoing inadequate support provided by KCS, rather than needs or circumstances unique to G.T. The Plaintiffs reject the Defendant's argument that the injunctive relief would not be final or is not described with sufficient particularity, arguing that the systemic reform they seek would involve a binding permanent injunction, the precise contours of which would be determined based on evidence presented at trial, that would gradually effect improvements in outcomes for the class.

Finally, they contend that the exhaustion argument is a merits issue and should not be re-litigated within this motion for class certification.

The previous decisions of this Court and of the Fourth Circuit outline the basic legal structure related to class certification in an IDEA case. The Fourth Circuit found that the original class propounded by the Plaintiffs failed to satisfy Rule 23(a)(2)'s commonality requirement. The Fourth Circuit's opinion emphasized that the previous class members, while harmed by violation of the same provision of law, lacked claims connected by a single or uniform policy or practice. The Court finds that the shortcomings remain in the new proposed class.

The Plaintiffs' new proposed class definition addresses some specific concerns identified by the Fourth Circuit. Where the previous class definition included all students with disabilities who need behavior supports, the current class includes only students who have been identified by KCS as having disabilities and needing behavior supports, eliminating claims or potential relief relating to the Defendant's process for identifying students in need of behavioral supports. However, the overarching problem with the previous class was that the alleged harm of individual class members "stem[med] from different alleged policy failures." (4th Cir. Op. at 26.) The Plaintiffs have not identified specific common policy failures that have resulted in the alleged inadequate provision of therapies to build social skills and self-regulation. The Plaintiffs concede that the specific therapies and supports will vary based on the individual needs of the students. They do not point to a particular point at which KCS fails to comply with the law, resulting in the alleged failures to provide adequate therapies. Instead, they again cite a collection of failures and inadequacies involving various personnel in various roles. The Plaintiffs assert that KCS fails to provide BIPs for students with behavioral needs, does a poor job of creating BIPs or other plans

to support students with behavioral issues, and that the plans it does create are poorly implemented. The reason(s) an individual student is not receiving adequate therapies include failure to communicate effectively with parents, inadequate training of both teachers and special education personnel, insufficient tracking of outcomes and services, inadequate oversight, lack of resources, failure to work with outside providers, poor documentation, or other issues. In short, the Plaintiffs continue to assert multiple systemic failures leading to poor results, rather than a common policy or practice that the Court could remedy with an injunction applicable to the entire proposed class.

The Fourth Circuit also outlined the "common questions" proposed by the Plaintiffs as to the previous proposed class, finding that they were not common to all class members' claims. Those questions included "whether the Board failed to 'identify students with disabilities who need behavior supports,'" "whether the Board properly develops and implements behavior supports, whether it sufficiently monitors students who are prescribed behavior supports, and whether it adequately trains staff responsible for providing behavior supports." (4th Cir. Op. at 20-21.) The new proposed class references "therapies to build social skills and self-regulation" rather than "behavior supports," but the asserted common questions are similar to those the Fourth Circuit rejected.

The first question, "[w]hether KCS has systematically failed to provide class members with appropriate therapies to build social skills and self-regulation," addresses only whether the purported class members suffer the same harm, not whether their harm stemmed from the same policy failure. (Pls.' Mem. at 11, 4th Cir. Op. at 17, 26.) Next, the Plaintiffs ask "[w]hether such therapies are required 'related services' under IDEA and/or Section 504," a purely legal question that does not demonstrate commonality. (Pls.' Mem. at 11.) The third question asks "[w]hether

13

the failure to provide appropriate therapies to build social skills and self-regulation is or has resulted in denial of FAPE [Free Appropriate Public Education." (*Id.*) That question cannot be readily answered on a class-wide basis but would instead require investigation of each purported class member's individual IDEA claim. (4th Cir. Op. at 15, quoting *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012), explaining that "whether a child has been denied a FAPE 'is the bottom-line liability question in any individual plaintiff's IDEA claim.'") The remaining three questions ask whether "the District's systematic failure to provide the class with appropriate therapies to build social skills and self-regulation" violate the IDEA, Section 504 of the Rehabilitation Act, Title II of the ADA, and the West Virginia Human Rights Act. (Pls.' Mem. at 11-12.) Those "common questions" do not point to a specific common practice tying the claims of the purported class members together.

There is no claim here that KCS is not completing some specific step of the special education process or has failed to hire personnel to fulfill a particular role or function or has a specific consistent practice impacting all students with disabilities in the same way. Fundamentally, a class definition that rests on whether students are receiving "appropriate" therapies incorporates individualized claims. One student may not receive appropriate therapies to build social skills because her classroom teacher neglects to provide skills training included in the curriculum in her IEP, while another student is not receiving appropriate self-regulation therapies because KCS has not coordinated with outside professionals to provide specialized therapy based on the student's particular disability. A single injunction will not solve both problems. Even if the Court crafted a broad or multi-part injunction, determining whether KCS

was complying with such an injunction would require examining individual student experiences to determine whether they were receiving appropriate therapies.

The Fourth Circuit's opinion provides clear guidance about what claims will, and what claims will not, satisfy the Rule 23(a)(2) commonality requirement in an IDEA case. The new class definition proposed by the Plaintiffs does not present common claims under the analysis required by the Fourth Circuit opinion remanding this case. Therefore, the Court finds that the motion for class certification must be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiffs' Motion for Class Certification* (Document 222) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   October 28, 2025

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA